IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-60505-Civ-COOKE/BANDSTRA

MURDOCH SECURITY AND
INVESTIGATIONS, INC.
a New York corporation,

    Plaintiff,
v.

NAVARRO GROUP LTD., INC.,
a Florida corporation and
NICHOLAS NAVARRO a/k/a
NICK NAVARRO, individually,

    Defendants.
_____/

## NAVARRO GROUP'S RESPONSE IN OPPOSITION
## TO PLAINTIFF'S SUPPLEMENTAL BENCH MEMORANDUM ON
## ENFORCEMENT OF SETTLEMENT AGREEMENT

Murdoch's Supplemental Bench Memorandum [D.E. 85-1.] (the "Memorandum") rests on a single false premise: that there was a meeting of the minds with respect to the settlement agreement Murdoch seeks to enforce. On the basis of that false premise, Murdoch makes two untenable arguments: First, that the Court has the power to and should, quite literally, fabricate certain implied terms to make an agreement where none otherwise exists.[1] Second, that the Court should do equity and conform the purported settlement agreement to Murdoch's view of the "proofs" notwithstanding the facts.[2] As we show below, there is no settlement agreement and thus no need to, after the fact, manufacture one.

---

[1] [D.E. 85-1, p. 2.].
[2] [D.E. 85-1, p. 2.].

**I.     INTRODUCTION (and the Facts as they really are)**

Murdoch concedes that the "Asset Purchase Agreement **may not have expressly contemplated** all of the circumstances that have arisen since the parties' Settlement Agreement . . . **which may require the court to imply certain commercially reasonable terms** so as to order specific performance."[3]

First, this statement is factually wrong. Murdoch refers to a circumstance that had, for a long while before the October weekend conversation between Vassell and Sharron Navarro, been a complete impediment to the parties ever actually making a contract: tax liabilities that contravened warranties and representations and precluded conveyance of title to the assets to be acquired. This circumstance existed during the discussion that resulted in the "June, 2008 document", and continued to be a fundamental and irresolvable impediment to a contract well into the October, 2008, scenario. Because, in June and later in October, Murdoch simply did not have the money to allow the tax liability to be satisfied from the proceeds of the sale paid at closing, there could never be, and never was, a contract. The parties – especially Navarro - knew that such a contract could never close and they, collectively, did not engage in what was recognized to be a pointless exercise: sign a contract that would be in an incurable breach the millisecond it was signed. So, the suggestion that an "implied" term may be imputed to cure this otherwise incurable affliction starts with a blatant misrepresentation of the facts: this patch is not to fix something that arose only after the supposed settlement was reached, as Murdoch now argues. The problem was a longstanding one that had already derailed any

---

[3] [D.E. 85-1, p. 1; (emphasis added).].

possibility of the parties signing a contract until the problem was solved. Murdoch's proposed bandaid does not remove the impediment to the contract so that the parties could legitimately sign a contract that could be performed. Murdoch's bandaid at best hides the, until then, impenetrable barrier to a contract from public view while the wound no doubt festers and finally erupts to derail the eventual closing by, once again, reminding the parties that Murdoch still did not have the money to pay the tax debt at closing, resulting in the same breach that Navarro avoided by never agreeing to and signing the contract in the first place.

In the same breath, Murdoch concedes that, at the time of the so-called settlement, the parties did not reach mutual agreement on every essential term (especially one, like this one (the non-payment of taxes and the governments' attendant lien rights), that would completely derail the transaction). Amazingly, Murdoch then contends that this Court should not only read certain terms to which the parties **never agreed** into the purported settlement agreement, but should do equity as well by forming a contract on the basis of Murdoch's view of the proofs.

II. **THERE IS NO ENFORCEABLE STTTLEMENT AGREEMENT SO THE COURT SHOULD NEITHER IMPLY TERMS NOR CONFORM AN AGREEMENT TO MEET MURDOCH'S VIEW OF WHAT THE CONTRACT SHOULD BE**

Under Florida law, "[p]rinciples governing general contract law apply to interpret settlement agreements."[4] As with any contract, a settlement agreement is

---

[4] *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009) (*citing Resnick v. Uccello Immobilien GMBH, Inc.,* 227 F.3d 1347, 1350 (11th Cir.2000)); *Robbie v. City of Miami*, 469 So.2d 1384, 1385 (Fla.1985). The interpretation of a settlement agreement is ordinarily a question of state law. *Chem. Bank v. First Trust of N.Y.* ( *In re Se. Banking Corp.*), 156 F.3d 1114, 1121 (11th Cir.1998) (*quoting Mastrobuono v.*

3

formed only when one party makes an offer and another party accepts it. Acceptance of a settlement offer, however, creates a binding settlement only if it is absolute, unconditional, and identical with the terms of the offer. [5] To compel enforcement of a settlement agreement, therefore, the "terms must be sufficiently specific and mutually agreed upon as to **every** essential element."[6] Ultimately, the making of a settlement agreement "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs - not on the parties having meant the same thing but on their having said the same thing."[7]

Here the parties did not say the same thing and did not mutually agree upon every essential element such that the purported settlement agreement is not absolute and unconditional, and the acceptance is not identical with the terms.

### A. The parties reached no mutual agreement on every essential term.

What to do about the unpaid taxes was clearly not the only matter upon which Murdoch and Navarro did not agree[8]. A recurring theme, and the subject and numerous emails, offers, rejections, counter-offers and counter-rejections, was Murdoch's stonewalling of financial information for Fortress, the buyer entity which

---

*Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 60 n. 4, 115 S.Ct. 1212, 1217 n. 4, 131 L.Ed.2d 76 (1995)).

[5] *Hanson v. Maxfield,* 2009 WL 3491039 * 2 (Fla. 1st DCA Oct 30, 2009) (*citing Nichols v. Hartford Ins. Co. of the Midwest*, 834 So.2d 217, 219 (Fla. 1st DCA 2002)).

[6] *First Fashion USA, Inc. v. Best Hair Replacement Mfrs., Inc.*, 2009 WL 4040325 * 6 (S.D.Fla. Nov 20, 2009); (emphasis added); *Hanson,* 2009 WL 3491039 at * 2 (citations omitted).

[7] *Hanson*, 2009 WL 3491039 at * 2 (citations omitted).

[8] What follows is not intended to be, and is not, an exhaustive recitation of the many contract terms that were the subject of negotiations that continued through **September 2009** (nearly a year after this so-called settlement agreement was supposedly reached). The record before the Court will provide greater details and specifications of the many issues upon which the parties did not ever agree.

was to sign the purchase money promissory note, and for Murdoch which was transferring shares of its common stock. Navarro was continually faced with "a pig in a poke", never knowing the real worth of what Murdoch promised, and articulated, at every opportunity, its demand for meaningful financial information ***before it would sign a contract.*** A Murdoch guarantee figured in numerous of the emails. Likewise, the application of the retention provision was the subject of numerous offers and counteroffers. As were, as the record shows, many, many other terms that one party or the other wanted and so advanced, to be accepted or rejected.

Murdoch places much importance on Ms. Navarro's October 2, 2008 email. But nowhere does Ms. Navarro say there is a contract: at best, "we are both pretty agreeable to the terms". But, foreshadowing the many things that ultimately precluded contract formation, Ms. Navarro continues: "There is a lot to talk about should we reach an agreement". At most, Vassell and Ms. Navarro chatted a time or two that weekend; they certainly did not resolve the "lot" of things critical to an actual agreement. That makes Murdoch's contention that Ms. Navarro's supposed "We have a deal" announcement that much more fantastical. The record confirms that the lawyers talked and emailed. But they did not agree, and that means there was no contract and no settlement.

### B. The purported settlement agreement is not absolute and unconditional.

Whatever agreement supposed emanated from Vassell's and Ms. Navarro's weekend chats was fraught with conditions and contingencies which were not addressed by the "June 2008 document" so as to permit a valid and enforceable

5

contract – as Murdoch must prove – **before** the lawyers got working during the afternoon of Monday, October 6, 2008. New terms, the impact of which was not previously agreed, were immediately identified in the first several of the lawyers' emails on October 6: inspection by Murdoch's factor, approval by Murdoch's factor (a financing contingency) and, importantly, the sale of Navarro's alarm business (something that could easily have been made a written contingency ***in the agreement that the parties would sign*** if the parties were, as Murdoch asserts, already agreed). These matters were not discussed with Ms. Navarro over that fateful weekend, and the importance and materiality of these matters cannot be underemphasized. These matters, and others conditions and contingencies expressed in the exchanges of emails that highlighted the continued negotiations conducted by the parties' lawyers, had to be articulated, in writing, and agreed by all **before** there could ever be a contract. Merely recognizing that conditions and contingencies qualified the nature of the parties' respective obligations emphasizes what Navarro has contended from the start of these proceedings: the parties intended that any contract that resulted from the, admittedly, prolonged discussions must be in writing and signed by all parties. That has not occurred.

### III. PLAINTIFF'S CASES ARE INAPPOSITE

Florida law is well established that courts do not possess the power to make contracts for the parties, or to rewrite,[9] alter, or change them under the guise of construction in order to make a new contract for the parties, even to achieve what the court might think is a more appropriate result or to relieve one side from an

---

[9] *In re SFD @ Hollywood, LLC*, 411 B.R. 788, 800 (S.D. Fla. 2009)(citations omitted)

improvident bargain.[10] Despite these axiomatic precepts, Murdoch asks this Court to make a contract, under the guise of contract construction, in order to have the purported agreement conform to what Murdoch would like the agreement to be. In this regard and as discussed next, Murdoch's cases are wholly inapposite on the facts here.

### A. There are no terms to imply on the facts here.

Murdoch cites two cases in support of the contention that this Court should "imply" certain terms to be contained in the supposed settlement agreement: *First Nationwide Bank v. Fla. Software Servs., Inc.*[11] and *7-Eleven, Inc. v. Stin, LLC*.[12] Neither of these cases, however, involved an action to create and then enforce a contract whose very existence is hotly disputed. Rather each involved already existing agreements and the parties had well defined rights under those existing agreements. Neither decision has any applicability here, a case in search of a contract.

In *First Nationwide Bank* a computer software licensor refused to give its consent to an assignment of the license until a higher license fee was paid. Unsurprisingly, the court held the licensor's failure to consent to an assignment of the license, until the proposed assignee-licensee paid a new and substantially higher license fee than the original license fee, was commercially unreasonable and a

---

[10] *In re SFD*, 411 B.R. at 800 (citations omitted); *Prestige Valet, Inc. v. Mendel*, 14 So.3d 282, 283 (Fla. 2d DCA 2009) (*citing Barakat v. Broward County Hous. Auth.*, 771 So.2d 1193, 1195 (Fla. 4th DCA 2000); *Beach Resort Hotel Corp. v. Wieder*, 79 So.2d 659, 663 (Fla.1955) ("It is well settled that courts may not rewrite a contract or interfere with the freedom of contract....")).
[11] 770 F. Supp. 1537, 1542 (M.D. Fla. 1991).
[12] 961 So. 2d 977, 981 (Fla. 4th DCA 2007).

breach of the implied covenant of good faith and fair dealing, particularly since the licensor would suffer no harm by the assignment. The general contract principle in *First Nationwide* (the construction of an assignment provision), therefore, cannot serve to trump basic principles of contract formation where the contract is a purported settlement agreement and there is a dispute about the existence of the alleged contract. What Murdoch asks the Court to imply here is nothing like the reasonableness of the assignment provision considered by the court in *First Nationwide Bank.*

Likewise, in *7-Eleven* a commercial landlord and prospective purchaser of leased property brought an action against a tenant, seeking a declaratory judgment that the tenant failed to exercise its right of first refusal. The Fourth District Court of Appeal held that "<u>under the specific facts</u>" the tenant properly exercised its right of first refusal by sending the landlord a second contract that satisfied landlord's objections to the first proposed contract. In this narrow context where 7-Eleven had indeed agreed to the every essential term in the contract, the District Court concluded that the first right of refusal was properly exercised. Again, *7-Eleven* stands for the unremarkable proposition that a contract should receive a reasonable construction, but it does not say that the principle can be used to "make" a contract where none otherwise exists, as Murdoch suggests should be done in this case.

Murdoch's reliance on the broad general statements of contract construction in the *First Nationwide Bank* and *7-Eleven* is misplaced. These cases do not accurately describe the duties and responsibilities of courts in interpreting whether a contract exists at all, particularly where Murdoch throws around in the

Memorandum such expressions as "good faith cooperation," "recalcitrant party" and "wrongdoing." Reliance on these phrases shows that Murdoch recognizes there was never mutual assent to every essential term. The cases Navarro cites above, however, demonstrate that this Court cannot make a contract for the parties, even to achieve what the Court might think is a more appropriate result or to relieve one side from an improvident bargain.[13]

### B. The Court has no power to make a contract to conform to one party's contentions.

Murdoch relies on a 1967 Florida case *Carmen v. Gunn*,[14] a 1979 North Carolina case, *Nugent v. Beckham*,[15] a 1991 New York case *Barnett v. Starr Mechanical Corp.*,[16] and a 1993 Florida case, *Roschman Partners v. S.K. Partners, I, Ltd.*,[17] for the proposition that this "Court has significant discretion to fashion an equitable order that accords with the bargain the parties struck in the Settlement Agreement."[18] These cases are, however, unsuitable for at least two reasons: One, none of these cases involved a settlement agreement, the existence of which is disputed; and Two, they all involved actual contracts, which is not the case here.

---

[13] *In re SFD @ Hollywood, LLC*, 411 B.R. 788, 800 (S.D. Fla. 2009)(citations omitted); *Prestige Valet, Inc. v. Mendel*, 14 So.3d 282, 283 (Fla. 2s DCA 2009) (*citing Barakat v. Broward County Hous. Auth.*, 771 So.2d 1193, 1195 (Fla. 4th DCA 2000); *Beach Resort Hotel Corp. v. Wieder*, 79 So.2d 659, 663 (Fla.1955) ("It is well settled that courts may not rewrite a contract or interfere with the freedom of contract....")).
[14] 198 So. 2d 76, 84 (Fla. 2d DCA 1967).
[15] 260 S.E. 2d 172, 709 (*sic*) (N.C. App. 1979).
[16] 574 N.Y.S. 2d 844, 846 (N.Y. App. Div. 1991).
[17] 627 So. 2d 2, 5 (Fla. 4th DCA 1993).
[18] [D.E. 85-1, p. 5.].

In the end, not one of these cases can alter this central fact: there is no agreement and, so, no reason to either imply terms or conform the agreement to Murdoch's view of it.

**IV.     CONCLUSION**

Murdoch acknowledges in its Memorandum that there is no agreement when it states: the parties "may not have expressly contemplated" the terms of the agreement, so that "may require the court to imply certain" terms. Neither reading terms into the purported settlement agreement nor conforming its supposed terms to a single party's view addresses the fundamental flaw in Murdoch's analysis: the very need to "fill in the blanks" means there was no meeting of the minds so as to create, in the first instance, an enforceable contract.

Respectfully submitted,

s/ Richard W. Epstein
Richard W. Epstein (Fla. Bar No.: 229091)
Richard.epstein@gmlaw.com
Evan B. Klinek (Fla. Bar No.: 134820)
Evan.Klinek@gmlaw.com
GREENSPOON MARDER P.A.
Trade Centre South, Suite 700
100 West Cypress Creek Road
Fort Lauderdale, Florida 33309
954.491.1120 (Telephone)
954.343.6958 (Direct Dial Telecopier)
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this **29th day of November 2009**. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic filing electronically.

Case No. 08-60505-CIV-Cooke/Bandstra<br>
Navarro's Response to Supplemental Bench Memorandum

          <u>s/ Richard W. Epstein</u>
          Richard W. Epstein

## SERVICE LIST

*Murdoch Security and Investigations, Inc. vs. Navarro Group Ld., and Nicholas Navarro, individually*
**CASE NO.: 08-60505-Civ-COOKE/BANDSTRA**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| Margaret L. Cooper, Esq.<br>Joanne M. O'Connor, Esq.<br>Jones Foster Johnston & Stubbs<br>505 S. Flagler Drive<br>Suite 1100<br>P.O. Box 3475<br>WPB, Fl 33402-34-75<br>561.659.3000 (Telephone)<br>561.650.0422 (Facsimile)<br><br>Attorneys for Plaintiff:<br>*Notice of Electronic Filing* | Richard W. Epstein, Esq.<br>Evan B. Klinek, Esq.<br>Greenspoon Marder, P.A.<br>700 Trade Centre South<br>100 W. Cypress Ck. Rd.<br>Ft. Lauderdale, Fl 33309<br>954.491.1120 (Telephone)<br>95.343.6958 (Facsimile)<br><br>AND<br><br>Frank C. Walker, Esq.<br>Co-Counsel for Defendants<br>STUART & WALKER, P.A.<br>600 N.E. Third Ave.<br>Fort Lauderdale, Florida 33304<br>Telephone: 954.764.7676<br>Facsimile: 954.763.4856<br><br>Attorneys for Defendants<br>*Notice of Electronic Filing* |